IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES ROBERT SLATER,<br><br>        Petitioner,<br><br>v.<br><br>THOMAS McGINLEY, Superintendent, SCI Coal Township;[1] STEPHEN A. ZAPPALA, JR., Allegheny County District Attorney; DISTRICT ATTORNEY OF ALLEGHENY COUNTY, and THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA,<br><br>        Respondents. | Civil Action No. 2: 15-cv-1647<br><br>Chief United States Magistrate Judge<br>Cynthia Reed Eddy |

### MEMORANDUM OPINION[2]

Before the Court is the *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition") filed *pro se* by Petitioner, James Robert Slater ("Petitioner" or "Slater") (ECF Nos. 4, 9). For the reasons that follow, the Petition will be dismissed and a certificate of appealability will be denied.

### Relevant and Procedural Background

Slater is challenging the judgment of sentence imposed upon him by the Court of Common Pleas of Allegheny County on October 21, 2013, after he pleaded guilty pursuant to a negotiated plea agreement.

---

[1] Effective February 17, 2016, Thomas McGinley was appointed as the Superintendent of SCI-Coal Township. Under Federal Rule of Civil Procedure 25(d)(1), he is automatically substituted as the respondent in this action.

[2] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to jurisdiction by a United States Magistrate Judge, including entry of a final judgment. (ECF Nos. 12 and 20).

1

A. Factual History

The facts underlying Slater's convictions were set forth at his guilty plea hearing as follows:

> Had this case proceeded to trial, the Commonwealth would have introduced evidence that on or about May 18 of 2007, the victim in this case was five years old. The Defendant, Mr. Slater, was 18 years old.
>
> On that date the victim, JE, her mother dropped her off at the defendant's mother's house to be babysat for the evening. At some point in time, the victim, JE, went up to the defendant's room for the purpose of playing video games.
>
> The defendant's mother remained downstairs. She would testify that she heard [JE] screaming in a way that she thought [JE] was in trouble or something was wrong. The defendant's mother, Miss Olivia Zinch,[3] ran upstairs.
>
> She found the defendant's bedroom door closed and locked. She began banging on it. Eventually she was able to open the door. She later reported to the police that the defendant was naked, and that [JE] was wearing a large, adult-size T-shirt that she had intended to sleep in.
>
> The defendant's mother called the police. The police came. [JE] was transported to Children's Hospital. She received a rape kit, as well as forensic interview.
>
> During [JE's] forensic interview, she testified that the defendant kissed her vagina, as well as, after undressing himself, placed his penis inside of her vagina.
>
> The rape kit, as well as [JE's] underwear were submitted to the Allegheny County Crime Lab. At Lab case No. 0705233, a scientist would testify to a reasonable degree of scientific certainty that three stains from the inside of [JE's] underwear contained DNA identified as belonging to the defendant.
>
> And with that, Your Honor, the Commonwealth would rest.

Plea & Sentencing Transcript, Oct. 21, 2013, at 5-7.

---

[3] The transcript of the Plea and Sentencing Hearing reflects that the prosecutor referred to Slater's mother as "Olivia Zinch." Her correct name, however, is Lydia Finch. Jury Trial Transcript, at 22.

B. Procedural History

Slater was charged by Criminal Information filed on July 26, 2007, in the Court of Common Pleas of Allegheny County, Pennsylvania, with one count each of rape of a child, involuntary deviate sexual intercourse ("ISDI") with a child, statutory sexual assault, unlawful conduct with a minor, indecent assault, indecent exposure, and corruption of minors in connection with a sexual assault of the juvenile victim, J.E., on May 17, 2007.

On August 29, 2008, Slater appeared before the Honorable Donna Jo McDaniel for a jury trial. Slater was represented by Lisa Phillips, Esquire, of the Office of the Public Defender. On May 1, 2008, the jury found Slater guilty of all charges except ISDI with a child and unlawful contact with a minor. On August 18, 2008, Judge McDaniel sentenced Slater to an aggregate sentence of fifteen and a half (15-1/2) to thirty-one (31) years of incarceration. After post-sentence motions were denied, the sentence was affirmed on direct appeal and the Pennsylvania Supreme Court denied Slater's Petition for Allowance of Appeal ("PAA").

On November 2, 2011, Slater filed a timely *pro se* petition under the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. § 9541 - 46. The PCRA court appointed Scott Coffey, Esquire, to represent Slater during his PCRA proceedings. The Commonwealth filed its Answer conceding that an evidentiary hearing was needed as the victim's testimonial competency had not been determined prior to trial. At the PCRA hearing, the Commonwealth agreed to a new trial, the PCRA court granted the petition, and Slater was awarded a new trial. Thereafter, Attorney Coffey was permitted to withdraw and the Office of Conflict Counsel was appointed to represent Slater.

On March 21, 2013, Slater's counsel filed a Motion for Competency and Taint Hearing. (ECF No. 13-7, at 23). By Order of May 30, 2013, the Office of Conflict Counsel was permitted

to withdraw and attorney Nicole Nino was appointed to represent Slater. (ECF No. 13-7 at 33). On October 2, 2013, Slater, represented by Attorney Nino, appeared before Judge McDaniel for a victim competency and taint hearing. The Commonwealth presented the testimony of the victim, J.E.[4] No other witnesses were called by either party. At the conclusion of the hearing, the court found that the victim was competent to testify. *See* Transcript of Proceedings: Competency Hearing, 10/2/2013 (ECF No. 25-1).

On October 21, 2013, Slater appeared before Judge McDaniel for a guilty plea hearing. Slater was represented by Attorney Nino and completed a Guilty Plea / Explanation of Defendant's Rights form. In exchange for his guilty plea, the Commonwealth proposed an agreed upon sentence of seven and one-half (7-1/2) years to fifteen (15) years imprisonment, along with lifetime SORNA registration. The court accepted the plea agreement and sentenced Slater according to the terms of the plea agreement. Slater neither filed post-sentence motions nor a direct appeal.

No further action was taken until thirteen months later, when on November 20, 2014, Slater filed a timely *pro se* petition for collateral review under the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. § 9541 - 46. Attorney Thomas N. Farrell was appointed PCRA counsel for him. On July 7, 2015, counsel filed an Amended PCRA petition raising the following two claims:

> 1. Petitioner requested counsel to timely file post-sentencing motions and an appeal immediately after he was sentenced.
>
> 2. The plea was involuntary [sic] entered when counsel promised Petitioner that he would be paroled on the date of his minimum sentence.

---

[4] At the time of the trial, the victim was six (6) years old; at the time of the evidentiary hearing she was eleven (11) years old.

On September 9, 2015, the Commonwealth filed its Answer and conceded that an evidentiary hearing should be scheduled. An evidentiary hearing was conducted before the PCRA court on November 10, 2015. Both Slater and his trial attorney, Nicole D. Nino, testified. At the conclusion of the hearing, the PCRA court resolved any issues of credibility in favor of Attorney Nino and dismissed Slater's PCRA petition as without merit. A final order was issued on November 12, 2015. (ECF No. 13-9 at 40).

Slater, still represented by Attorney Farrell, filed a Notice of Appeal to the Superior Court. On November 19, 2016, the PCRA court filed its Opinion pursuant to Pa.R.A.P. 1925(a). (ECF No. 13-10 at 25-30). Thereafter, PCRA counsel filed a no merit brief and motion for leave to withdraw. (ECF No. 13-10 at 33 - 39). On October 12, 2016, the Superior Court granted Attorney Farrell's petition to withdraw and affirmed the dismissal of Slater's PCRA petition. (ECF No. 13-11 at 22 - 30). Slater did not seek further review.

Having been denied relief in state court, Slater filed a timely *pro se* federal habeas petition in this Court,[5] in which he raises three claims of ineffective assistance of trial counsel ("IATC"), each with multiple sub-issues. Slater acknowledges that none of the claims raised in his federal habeas petition was raised either on direct appeal or in his post-conviction PCRA proceedings. (ECF No. 4 at 6).

Respondents filed a timely Answer (ECF No. 23) in which they argue that while Slater's claims are technically exhausted (because there are no longer any state remedies available to him), the claims are procedurally defaulted (because of the state procedural one-year statute of

---

[5] The case was commenced on December 15, 2015, with the filing by Slater of a motion for leave to proceed *in forma pauperis*. Because Slater had failed to provide the required financial documents, the case was administratively closed on January 6, 2016. On December 6, 2016, almost a year later, Slater paid the filing fee and the Petition was filed. (ECF No. 4).

limitations bar). Respondents contend that Slater has not demonstrated cause and actual prejudice to overcome the procedural default. In response, Slater filed a Brief in Support of his Petition (ECF No. 26), in which he only addresses his claim regarding counsel's performance at the competency hearing:

> 1. Whether procedural default should be excused under *Martinez v. Ryan* where PCRA counsel failed to raise any claim of plea counsel's ineffectiveness at the competency hearing?
>
> 2. Whether plea counsel was ineffective at the competency hearing?

Petitioner's Br. at 1 (ECF No. 26).

The Court ordered Respondents to file a Supplemental Brief, which they did on November 16, 2018. (ECF No. 32). The Court has reviewed the filings of the parties, as well as the state court record, including the transcripts from the competency hearing held on October 2, 2013, and the plea and sentencing hearing held on October 21, 2013. The matter is ripe for disposition.

**Standard of Review**

This case is governed by the federal habeas statute applicable to state prisoners. 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, enacted on April 24, 1996 ("AEDPA"), "which imposes significant procedural and substantive limitations on the scope" of the Court's review. *Wilkerson v. Superintendent Fayette SCI*, 871 F.3d 221, 227 (3d Cir. 2017), *cert. denied*, No. 17-7437, --U.S.---, 138 S.Ct. 1170 (Feb. 26, 2018).

The constitutional claims at the heart of Slater's habeas petition are that his trial counsel provided ineffective assistance of counsel during the pretrial phase, at the competency hearing, and during the guilty phase proceedings. Slater concedes that his IATC claims are procedurally

defaulted. *See Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002) (claims of trial counsel's ineffectiveness are waived if not raised on PCRA review). A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if the petitioner can show "cause" to excuse his failure to comply with state procedure and "actual prejudice resulting from the alleged constitutional violation." *Preston v. Superintendent Graterford SCI,* 902 F.3d 365, 375 (3d Cir. 2018) (quoting *Davila v. Davis*, -- U.S. ---, 137 S.Ct. 2058, 2065 (2017) (quoting *Wainwright v. Skyes*, 433 U.S. 72 (1977)).[6]

The United States Court of Appeals for the Third Circuit recently repeated the requirements of the narrow exception to the doctrine of procedural default recognized by the United States Supreme Court in *Martinez v. Ryan*, 566 U.S. 1 (2012): "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial . . . [if] a petitioner [] can show that: 1) his procedurally defaulted ineffective assistance of trial counsel claim has 'some merit' and that 2) his state post-conviction counsel was 'ineffective under the standards of *Strickland v. Washington*'." *Workman v. Superintendent Albion, SCI,* 908 F.3d 896, 903 (3d Cir. 2018).

---

[6] A petitioner, alternatively, can overcome a procedural default by demonstrating that the court's failure to review the defaulted claim will result in a " fundamental miscarriage of justice." Preston v. Superintendent Graterford, 902 F.3d 365, 375 n.11 (3d Cir. 2018) (citing *Coleman v. Thompson*, 501 U.S. 722, 748 (1991); *McCandless v. Vaughn*, 172 F.3d 225, 260 (3d Cir. 1999)) "However, this exception is limited to a 'severely confined category [] [of] cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner]'." *Id.* (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013) (internal alteration in original) (quoting *Schlup v. Delo*, 514 U.S. 298, 329 (1995)). Slater has not urged that this exception applies here.

To demonstrate that the claim has some merit, a petitioner must "show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id.* (quoting *Miller-El v. Cockrell*, 537 U.S. 322 (2003)). *Martinez* also requires that the petitioner must also show that his PCRA counsel was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984).

*Strickland* has two components. Under the first prong of *Strickland*, often referred to as the "performance" prong, a petitioner must show that counsel's performance fell below an below an objective standard of reasonableness." *Id.* at 688. Under the second prong, often referred to as the "prejudice" prong, a petitioner must demonstrate prejudice as a result of counsel's deficient performance. *Id*. at 692. Although a petitioner must satisfy both prongs to succeed on his ineffectiveness claim, the Supreme Court noted that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* at 697. *See also Mathias v. Superintendent Frackville SCI*, 876 F.2d 462, 477 (3d Cir. 2017).

Slater's claims will be reviewed with these standards in mind.

### Discussion

Slater raises three IATC claims in his Petition. As stated above, Slater acknowledges that the claims are procedurally defaulted and attempts to overcome the default of the claims by arguing that they fall within the exception enunciated by the Supreme Court in *Martinez*. For the reasons that follow, the Court finds that none of Slater's claims have "some merit" under the standard contemplated by *Martinez* to excuse their procedural default. However, even assuming *arguendo* that they do, and that PCRA counsel, Attorney Farrell, rendered ineffective assistance

8

by failing to pursue them during the state collateral proceedings,[7] each of the claims nevertheless will be denied as without merit.

## Claim One - IATC during pretrial stage

In his first claim, Slater argues that his trial counsel was ineffective when she failed to file pre-trial motions for the suppression of DNA evidence and related expert testimony, additional forensic testing of the victim, for a second preliminary hearing, and a second competency hearing.

The Court finds Slater's claim to be without merit. First, the Guilty Plea / Explanation of Defendant's Rights form clearly indicates that Slater knowingly waived the filing of any pretrial motions. On the form, he affirmatively responded to the following questions:

> 24. By pleading guilty, you are admitting the crime. You are stating that you do not challenge or dispute the charges against you. Do you fully understand this?
>
> 25. By pleading guilty, you give up the right not only to file pretrial motions, but also you abandon or give up any pretrial motions already filed and not yet decided and any pretrial motions in which decisions were already made. Do you fully understand this?
>
> 26. Do you understand that by pleading guilty, you also give up the right to present or assert any defenses on your behalf.
>
>> These defenses might include alibi, self-defense, mental infirmity, or insanity. Have you discussed with your attorney why these defenses are not available in your case.

(ECF 13-7 at 35). Next, the Plea and Sentencing Hearing Transcript indicates that Slater clearly

---

[7] "A substantial claim alone is not sufficient to excuse a petitioner's procedural default. *Martinez* hold that state post-conviction counsel must be 'ineffective under the standards of *Strickland v. Washington*' to excuse the procedural default of the underlying claim." *Workman*, 908 F.3d at 903 (citing *Strickland*, 566 U.S at 14).

understood all the questions on the Guilty Plea/ Explanation of Rights form. At Slater's plea hearing, the court addressed the plea form asking Slater:

> THE COURT: Mr. Slater, you're pleading guilty. Are you pleading guilty because you are guilty?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: You filled out the Guilty Plea / Explanation of Defendant's rights. Did you read, understand, and answer all the questions?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Did you do so while your attorney was available?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Are you satisfied with the services of Miss Nino?
>
> THE DEFENDANT: Yes.

Transcript, 10/21/2013 at 7-8.

After a thorough review of the state court record on this issue, the Court finds that Slater absolutely fails to show that his trial counsel was deficient in her representation of Slater for failing to file various pretrial motions. It is undisputed that counsel filed a pretrial motion for a competency and taint hearing, which was held. After this motion was filed and ruled upon, Slater pled guilty, thereby waiving his right to file and proceed with any other pretrial motions. As set forth above, during the plea and sentencing colloquy, Slater stated, among other things, that he understood the nature of the charges against him; that he read, understood, and completed the Guilty Plea / Explanation of Defendant's Rights form; that he was entering his guilty plea because he was guilty; that he affirmatively agreed to waive any pretrial motions; and that he was satisfied with the services of plea counsel. (Transcript, 10/21/13 at 4-8).

For these reasons, the Court finds that Slater's claim is not substantial enough to warrant falling into the *Martinez* exception. However even assuming *arguendo* that the procedural default could be excused under *Martinez*, the Court finds that Slater cannot establish that his trial counsel was ineffective under either prong of *Strickland* as the claim is without merit.

Claim Two: IATC during competency hearing

In his second claim, Slater argues that his trial counsel was ineffective during the competency hearing for failing to question the victim adequately as to her capacity to remember, tell the truth, and a specific inconsistency in her testimony regarding whether it was "anal" or "vaginal" intercourse. Additionally, Slater argues that his trial counsel was ineffective for failing to object and litigate the Commonwealth's failure to meet its burden of victim competency and in failing to call any witnesses at the competency and taint hearing.[8]

Pennsylvania courts apply the following three-part test to determine the testimonial competency of a young child: "(1) The witness must be capable of expressing intelligent answers to questions; (2) The witness must have been capable of observing the event to be testified about and have the ability to remember it; and (3) An awareness of the duty to tell the

---

[8] The Supreme Court of Pennsylvania has described a "taint" claim as follows:

> The core belief underlying the theory of taint is that a child's memory is peculiarly susceptible to suggestibility so that when called to testify a child may have difficulty distinguishing the fact from fantasy. . . . Taint is the implantation of false memories or the distortion of real memories caused by interview techniques of law enforcement, social service personnel, and other interested adults, that are so unduly suggestive and coercive as to infect the memory of a child, rendering that child incompetent to testify.

*Commonwealth v. Delbridge,* 855 A.2d 27, 34–35 (Pa. 2003) (citations omitted). In Pennsylvania, an allegation of taint is reviewed in a competency hearing. *Id.* at 39–40; *Commonwealth v. Judd,* 897 A.2d 1224, 1228 (Pa. Super. Ct.), *appeal denied,* 912 A.2d 1291 (Pa. 2006) (Table).

truth." *Commonwealth v. Delbridge*, 855 A.2d 27 (Pa. 2003). "An allegation of taint centers on the second element of the above test." *Id*. "In order for the court to investigate the issue of taint at a competency hearing . . . the moving party must come forward with evidence of taint." *Id*. The moving party's burden is a heavy one:

> The party alleging taint bears the burden of production of "some evidence" of taint as well as the ultimate burden of persuasion to show taint by clear and convincing evidence after any hearing on the matter. When determining whether a defendant has presented "some evidence" of taint, the court must consider the totality of the circumstances surrounding the child's allegations. Some of the factors that are relevant in this analysis are: (1) the age of the child; (2) the existence of a motive hostile to the defendant on the part of the child's primary custodian; (3) the possibility that the child's primary custodian is unusually likely to read abuse into normal interaction; (4) whether the child was subjected to repeated interviews by various adults in positions of authority; (5) whether an interested adult was present during the course of any interviews; and (6) the existence of independent evidence regarding the interview techniques employed.

*Id*. (citations omitted). The Pennsylvania courts have emphasized that the issue of taint comes into play only when a young child testifies at trial. When a witness is fourteen (14) years or older, taint does not become an issue. *Commonwealth v. Pena*, 31 A.2d 704, 70 (Pa. Super. Ct. 2011).

At the competency hearing, the victim testified that she understood the importance of telling the truth when she was in court and that she knew the difference between the truth and a lie. *See* Competency Hearing Transcript, at 4-5. She further testified that she remembered testifying at trial, that her testimony was regarding things that she remembered really happening, and that her recollection was not the result of suggestions or influence by any individual. *Id.*

Slater's counsel thoroughly questioned the victim about her ability to remember what happened and to tell the truth. *Id*. at 6-9. Moreover, Slater's counsel asked questions targeting the issue of taint. Specifically, the victim was extensively questioned by Slater's counsel about

12

the nature of the interactions between (1) the victim and Miss Finch immediately following the assault, (2) the victim and her parents on their way to the hospital, and (3) the victim and the forensic interviewer once at the hospital. *Id*. at 7-9. While Slater's counsel did not question the victim about any interactions she may have had with Detective Hutchinson, there is no indication in the record that Detective Hutchinson ever interviewed the victim. In his report, Detective Hutchinson wrote that he observed the forensic interview, not that he participated in it. ECF No. 13-5 at 5.

Slater has provided no support for his claims that counsel's decision to cross-examine the victim on the presence of taint rather than calling additional witnesses was ineffective. In reviewing the transcript, this Court finds that the victim's responses do not indicate the presence of any false memories or suggestive interview techniques. The manner of the victim's questioning and its effects on the victim's testimony were addressed through the cross-examination of the victim. There simply was no need for Slater's counsel to call any witnesses.

Slater has failed to provide any evidence that the victim was subject to any inappropriate influence from any individual with whom she came in contact with following the assault.

As with his first claim, the Court finds that Slater cannot overcome the procedural default of his IATC claim under *Martinez*. And even assuming *arguendo* that the procedural default could be excused under *Martinez*, the Court finds that Slater has failed to demonstrate that his trial counsel's performance during the competency and taint hearing was constitutionally ineffective. This claim, therefore, will be denied.

### Claim Three: IATC during Guilty Plea Proceeding

Slater's final claim is that trial counsel was ineffective during the guilty plea proceedings when she failed to advise him of the grounds to suppress incriminating evidence and failed to

advise him of potential defenses of arguable merit. Fatal to Slater's claim is that he does not explain what specific defenses or grounds to suppress incriminating evidence of arguable merit were available and to which his counsel failed to inform him of. Habeas relief cannot be granted on speculation and conjecture. Further, it appears that Slater was, in fact, well served by his trial counsel.

The record reflects that his trial counsel did discuss possible defenses with him pre-trial, and he agreed to waive his right to pursue suppression issues by pleading guilty. *See* ECF No. 13-7 ("Guilty Plea Explanation of Defendant's Rights, ¶ 25" and Plea and Sentencing Hearing Transcript, 10/21/2013). The Court finds that Attorney Nino not only provided effective representation at Slater's guilty plea proceeding, but she negotiated a sentence for Slater that involved substantially less jail time than he received at the conclusion of his original trial, i.e., fifteen and one half (15-1/2) to 31 (31) years of incarceration.

Like Slater's other two claims, this claim is also not substantial enough to warrant falling into the *Martinez* exception. Further, even assuming *arguendo* that the procedural default could be excused under *Martinez*, the Court denies the claim in the alternative as being without merit.

## Certificate of Appealability

Section 102 of AEDPA, which is codified at 28 U.S.C. § 2253, governs the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the

14

denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. Applying those standards here, the Court concludes that jurists of reason would not find it debatable whether each of Slater's claims should be dismissed. Accordingly, a certificate of appealability should be denied.

## Conclusion

For all of the above reasons, the petition for a writ of habeas corpus will be dismissed and a certificate of appealability will be denied.

Dated: January 3, 2019
                                                    s/ Cynthia Reed Eddy
                                                    Cynthia Reed Eddy
                                                    Chief United States Magistrate Judge

cc:    JAMES R. SLATER
        HS-1987
        SCI Coal Township
        One Kelley Drive
        Coal Township, PA 17866-1021
        (via U.S. First Class Mail)

        Emily B. Grawe
        Allegheny County District Attorney's office
        (via ECF electronic notification)